statement that Mr. Anemone's handling of the Plasser-Bauer case involved "police misconduct of the highest order, contriving a nonexistent informant and using such an ugly device to accuse an individual of specific wrongdoing without evidence," and that "[t]he subsequent actions of . . . Anemone are replete with obstruction, half truths and outright misrepresentations to avoid admitting their wrongdoing."

88. An article in the April 2, 2003 edition of the *Daily News* quoted the Interim Report's characterization of Anemone's statements to the *New York Times* as a "long and self-serving account" and a desperate attempt "to cloak [himself] in the garb of whistle blower." The same article reported that "[t]he Metropolitan Transportation Authority's top two law enforcement officials were stripped of their badges and placed on leave yesterday after agency investigators found they cooked up a confidential informant to smear an MTA official, then repeatedly lied about it," and characterized the episode as an "unflattering chapter in the career of Anemone, once the highest-ranking uniformed member of the NYPD."

89. On the same day, the *New York Times* reported that the "authority's inspector general contends that [Anemone and Casale] have been reckless and even dishonest in their zeal to uncover corruption," and quoted defendant Sansverie's Interim Report that "Anemone . . . admitted that there never had been a confidential informant." The Associated Press also ran a story stating that "transit officials have labeled Anemone a liar who's unfit for duty," and quoted extensively from the Interim Report.

90. Upon information and belief, these stigmatizing statements were disseminated by defendants with the intent of retaliating against Mr. Anemone for his criticism of the MTA and were part of the MTA's campaign to silence Mr. Anemone.

91. In addition to the release of the Interim Report, following Mr. Anemone's suspension, MTA officials made a number of other inflammatory statements to the press. For example, in an newspaper article dated April 2, 2003, Mr. Tom Kelly, spokesperson of the MTA, stated that the suspension of Mr. Anemone and Mr. Casale have "nothing to do with spite . . . [t]hey lied."

C. **Mr. Anemone's April 2nd Statements to the Press**

92. Following his suspension from the MTA, Mr. Anemone discussed his situation with the press, reiterating his view that the MTA was attacking him in an attempt to thwart his efforts to uncover and investigate corruption and security risks at the MTA.

93. In response to these critical statements to the press, defendants retaliated yet again, by making additional defamatory statements to the press. An April 11, 2003 Associated Press story reported that MTA officials had found that Mr. Anemone entered "questionable deals with former colleagues [by] hiring . . . two bomb-sniffing dog patrols from two companies headed by former NYPD colleagues." These statements were part of the MTA's continued effort to smear Mr. Anemone in the press and cow him into silence.

D. **Mr. Anemone Testifies Before the Assembly**

94. On April 11, 2003, Mr. Anemone testified before the New York State Assembly Standing Committee on Corporations, Authorities, and Commissions ("the Assembly Committee") for a public hearing concerning Reform of the Metropolitan Transportation Authority.

95. Mr. Anemone's statements before the Assembly Committee were critical of the performance of the MTA Inspector General's office. Mr. Anemone expressed his

"concerns about the [Inspector General's] commitment to combating corruption," including (i) the Inspector General's failure to discover and prosecute gross corruption and fraud by I-Lite during a prior investigation; (ii) defendant Sansverie's disclosure of a confidential investigation that Mr. Anemone had referred to during a private meeting; and (iii) assignment of investigators to "inconsequential work and allow[ing] the frauds [against the MTA] to continue."

96. Many of Mr. Anemone's statements were subsequently repeated in by various regional and national newspapers.

E. **Inspector General Issues Second Report on Mr. Anemone**

97. Seven days after Mr. Anemone's critical testimony before the Assembly, defendant Sansverie took his revenge through a letter dated April 18, 2003 to defendant Kalikow that alleged additional improprieties by Mr. Anemone (the "Sansverie Letter").

98. Specifically, the Sansverie Letter alleged wrongdoing by Mr. Anemone and Mr. Casale in the formation of a proposed board of experts – the Counter Terrorism Advisory Board ("CTAB") – that would advise the JITF in various areas of emergency management (e.g., medical, engineering, psychological).

99. Mr. Sansverie alleged that Mr. Anemone had grossly misrepresented the size and composition of the CTAB and that he violated the law by providing CTAB members with MTA identification.

100. The Sansverie Letter also intimated that Mr. Anemone had acted improperly by awarding a canine security contract to a company that was operated by an individual he was acquainted with from his work at the NYPD

101. These allegations of wrongdoing were false and based on gross distortions of facts surrounding the creation of the CTAB and the approval of the canine security contract at issue.

102. Upon information and belief, defendant Sansverie wrote the Sansverie Letter, leaked it to the press, and posted it on the MTA website in retaliation for, among other things, Mr. Anemone's statements to the Assembly Committee criticizing defendant Sansverie publicly for his poor performance as MTA Inspector General.

### F. Defendants Terminate Mr. Anemone

103. On May 8th, defendant Dellaverson advised Mr. Anemone of the MTA's decision to terminate his employment as Deputy Executive Director of Security.

104. Mr. Anemone was suspended, terminated, and systematically discredited and stigmatized by defendants with total disregard for his rights.

105. Mr. Anemone's ability to respond to the first attack on his good name -- the Interim Report, released on March 31, 2003 -- was sabotaged by defendants' continual failure to disclose the "evidence" purportedly supporting their allegations.

106. Though the Interim report relied largely on statements made by Mr. Casale in his interviews with the Inspector General's Office, defendant Dellaverson refused to supply Mr. Anemone with a copy of that transcript. Moreover, although defendants supplied Mr. Anemone with a copy of his own deposition transcript on April 11, 2003, he was not given the exhibits to that transcript until one weekday before Mr. Anemone's response was due to defendant Dellaverson.

107.   Mr. Anemone's requests for additional time to respond to the Interim Report were denied.

108.   Mr. Anemone was never given an opportunity to respond to the allegations contained in the Sansverie Letter.  The Sansverie Letter was leaked to the press on April 21, 2003, and was not provided to Mr. Anemone until on or about April 30, 2003 – approximately eight days after the April 22nd due date for any response to the Interim Report.

109.   Defendant MTA's review of the allegations contained in the Interim Report and the Sansverie Letter was tainted by the significant and improper involvement of defendant Dellaverson in the review process.

110.   Defendant Dellaverson was directly involved in the events underlying the allegations against Mr. Anemone, and–as the individual named as the "community source" for the allegations against Kenneth Bauer–had an interest in undermining Mr. Anemone's credibility and terminating his employment with the MTA.

111.   Nevertheless, on information and belief, Dellaverson was a central participant in the process of reviewing the allegations against Mr. Anemone and making the decisions to suspend and terminate Mr. Anemone.

112.   On May 9, 2003, attorneys for Mr. Anemone requested a name clearing hearing to contest the unfounded allegations levied by defendants against Mr. Anemone–allegations that sullied his reputation as a leader and innovator in law enforcement.

113.   Defendants denied that request.

## FIRST CLAIM FOR RELIEF
(42 U.S.C. § 1983, First Amendment Retaliation)

114.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth at length herein.

115.   As set forth above, by, among other things, exposing endemic corruption, reporting it to his superiors, reporting it to the press, and providing sworn testimony about it to a state legislative committee, Mr. Anemone engaged in activity protected by the First Amendment.

116.   Motivated by an intent to punish Mr. Anemone for his protected activity, defendants took numerous adverse actions against Mr. Anemone, including without limitation, suspending and then terminating him from his position as Deputy Director of Security of the MTA. Defendants deprived Mr. Anemone of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution, and conspired among themselves to do so (taking numerous steps in furtherance thereof) or failed to prevent others from doing so.

117.   All defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, wantonly and knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the First and Fourteenth amendments to the United States Constitution.

118.   In addition, on information and belief, defendants Kalikow, Lapp, Dellaverson, and Sansverie conspired among themselves to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the First and Fourteenth Amendments to the United

States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

119. Moreover, at all times relevant to this complaint, defendants Kalikow, Lapp, Dellaverson, and Sansverie as Commissioner, Executive Director, Director of Labor Relations, and Inspector of General of the MTA, respectively, were policy-makers acting on behalf of defendant MTA and with full authority to make policy with respect to the treatment of their immediate employees. Accordingly, Kalikow, Lapp, Dellaverson, and Sansverie's actions in removing Mr. Anemone from his position at the MTA were taken pursuant to official policy, practice and custom.

120. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Anemone suffered and continues to suffer actual damages, in forms, including without limitation, lost past and future earnings, mental anguish, pain and suffering.

**SECOND CLAIM FOR RELIEF**
(N.Y. State Constitution, Free Speech Retaliation)

121. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth at length herein.

122. As set forth above, by, among other things, exposing endemic corruption, reporting it to his superiors, reporting it to the press, and providing sworn testimony about it to a state legislative committee, Mr. Anemone engaged in activity protected by the New York State Constitution.

123. Motivated by an intent to punish Mr. Anemone for his protected activity, defendants took numerous adverse actions against Mr. Anemone, including without limitation,

suspending and then terminating him from his position as Deputy Director of Security of the MTA. Defendants deprived Mr. Anemone of rights, remedies, privileges and immunities guaranteed by the New York State Constitution, and conspired among themselves to do so (taking numerous steps in furtherance thereof) or failed to prevent others from doing so.

124. By suspending and then terminating Mr. Anemone's employment as Deputy Director of Security of the MTA solely on the basis of his exercise of his right to free speech, defendants deprived Mr. Anemone of rights, remedies, privileges and immunities guaranteed to every citizen of the State of New York by the New York Constitution, and conspired among themselves to do so (taking numerous steps in furtherance thereof), or failed to prevent others from doing so.

125. All individual defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, wantonly and knowingly, and with the specific intent to deprive plaintiff of his right to free speech as secured by the New York Constitution.

126. In addition, upon information and belief, defendants Kalikow, Lapp, Dellaverson, and Sansverie conspired among themselves to deprive plaintiff of his right to free speech guaranteed by the New York State Constitution and took numerous overt steps in furtherance of such conspiracy, as set forth above.

127. Moreover, at all times relevant to this complaint, defendants Kalikow, Lapp, Dellaverson, and Sansverie as Commissioner, Executive Director, Director of Labor Relations, and Inspector of General of the MTA, respectively, were policy-makers acting on

behalf of defendant MTA and with full authority to make policy with respect to the treatment of their immediate employees. Accordingly, Kalikow, Lapp, Dellaverson, and Sansverie's actions in removing Mr. Anemone from his position at the MTA were taken pursuant to official policy, practice and custom.

128.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Anemone suffered and continues to suffer actual damages, in forms, including without limitation, lost past and future earnings, mental anguish, pain and suffering.

### THIRD CLAIM FOR RELIEF
(42 U.S.C. § 1983/Procedural Due Process/U.S. Constitution)

129.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth at length herein.

130.    At all times relevant hereto, Mr. Anemone had a valuable property interest in his employment with the MTA, his reputation, and his status.

131.    By engaging in the scheme set forth above, including without limitation, by: (1) refusing to provide the documentary evidence cited in support of the allegations contained in the Interim Report; (2) failing to provide Mr. Anemone with an opportunity to respond to Sansverie Letter; (3) allowing defendant Dellaverson to act as the judge of the allegations against Mr. Anemone; (4) refusing to provide a name-clearing hearing for Mr. Anemone – the defendants impermissibly denied plaintiff his property interest without due process of law and conspired among themselves to do so (taking numerous steps in furtherance thereof), or failed to prevent others from doing so.

132. In addition, on information and belief, defendants Kalikow, Lapp, Dellaverson and Sansverie conspired among themselves to deprive Mr. Anemone of his constitutional right to due process of law as secured by 42 U.S.C. § 1983, and by the Fourteenth Amendments to the United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

133. Defendants Kalikow, Lapp, Dellaverson and Sansverie – who controlled, operated, presided over, and/or were employed by the MTA – acted at all times under color of law.

134. Defendants Kalikow, Lapp, Dellaverson and Sansverie acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as MTA employees. Said acts by defendants Kalikow, Lapp, Dellaverson and Sansverie were beyond the scope of their jurisdiction, without authority of law, and an abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Anemone of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourteenth Amendment to the United States Constitution.

135. Moreover, at all times relevant to this complaint, defendants Kalikow, Lapp, Dellaverson, and Sansverie as Commissioner, Executive Director, Director of Labor Relations, and Inspector of General of the MTA, respectively, were policy-makers acting on behalf of defendant MTA and with full authority to make policy with respect to the treatment of their immediate employees. Accordingly, Kalikow, Lapp, Dellaverson, and Sansverie's actions in removing Mr. Anemone from his position at the MTA were taken pursuant to official policy, practice and custom.

136. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Anemone suffered and continues to suffer actual damages, in forms, including without limitation, lost past and future earnings, mental anguish, pain and suffering.

### FOURTH CLAIM FOR RELIEF
(New York State Procedural Due Process Violation)

137. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth at length herein.

138. At all times relevant hereto, Mr. Anemone had a valuable property interest in his employment with the MTA, his reputation, and his status.

139. By engaging in the scheme set forth above, including without limitation, by: (1) refusing to provide the documentary evidence cited in support of the allegations contained in the Interim Report; (2) failing to provide Mr. Anemone with an opportunity to respond to Sansverie Letter; (3) allowing defendant Dellaverson to act as the judge of the allegations against Mr. Anemone; (4) refusing to provide a name-clearing hearing for Mr. Anemone – the defendants impermissibly denied plaintiff his property interest without due process of law in violation of New York State Constitution, Art. 1, sec. 6, and conspired among themselves to do so (taking numerous steps in furtherance thereof), or failed to prevent others from doing so.

140. In addition, on information and belief, defendants Kalikow, Lapp, Dellaverson and Sansverie conspired among themselves to deprive Mr. Anemone of his constitutional right to due process of law as secured by New York State Constitution, Art. 1, sec. 6, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

141. Defendants Kalikow, Lapp, Dellaverson and Sansverie – who controlled, operated, presided over, and/or were employed by the MTA – acted at all times under color of law.

142. Defendants Kalikow, Lapp, Dellaverson and Sansverie acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as MTA employees. Said acts by defendants Kalikow, Lapp, Dellaverson and Sansverie were beyond the scope of their jurisdiction, without authority of law, and an abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Anemone of his constitutional rights secured the New York State Constitution, Art. 1, sec. 6.

143. Moreover, at all times relevant to this complaint, defendants Kalikow, Lapp, Dellaverson, and Sansverie as Commissioner, Executive Director, Director of Labor Relations, and Inspector of General of the MTA, respectively, were policy-makers acting on behalf of defendant MTA and with full authority to make policy with respect to the treatment of their immediate employees. Accordingly, Kalikow, Lapp, Dellaverson, and Sansverie's actions in removing Mr. Anemone from his position at the MTA were taken pursuant to official policy, practice and custom.

144. As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Anemone suffered and continues to suffer actual damages, in forms, including without limitation, lost past and future earnings, mental anguish, pain and suffering.

## FIFTH CLAIM FOR RELIEF
(42 U.S.C. § 1983/Due Process/U.S. Constitution)

145. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth at length herein.

146. At all times relevant hereto, Mr. Anemone had a valuable liberty interest in his employment with the MTA, his reputation, and his status.

147. By engaging in the conduct set forth above, including without limitation, by: (i) releasing the Interim Report and the defamatory statements contained therein to the press; (ii) issuing a press release regarding the suspension of Mr. Anemone; (iii) posting the Sansverie Letter and the defamatory statements contained therein on the MTA website; and (iv) making various other defamatory statements to the press – defendants impermissibly stigmatized plaintiff, causing damage to his good name and reputation in conjunction with his termination from government employment.

148. Defendants impermissibly denied plaintiff his property interest without due process of law and conspired among themselves to do so (taking numerous steps in furtherance thereof), or failed to prevent others from doing so.

149. In addition, on information and belief, defendants Kalikow, Lapp, Dellaverson and Sansverie conspired among themselves to deprive Mr. Anemone of his constitutional right to due process of law as secured by 42 U.S.C. § 1983, and by the Fourteenth Amendments to the United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

150. Defendants Kalikow, Lapp, Dellaverson and Sansverie -- who controlled, operated, presided over, and/or were employed by the MTA -- acted at all times under color of law.

151. Defendants Kalikow, Lapp, Dellaverson and Sansverie acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as MTA employees. Said acts by defendants Kalikow, Lapp, Dellaverson and Sansverie were beyond the scope of their jurisdiction, without authority of law, and an abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Anemone of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourteenth Amendment to the United States Constitution.

152. Defendants' stigmatizing conduct has marred Mr. Anemone's reputation to such an extent that he has been unable to secure regular employment in the law enforcement profession since his termination from the MTA in May 2003.

153. By stigmatizing Mr. Anemone as a dishonest man and a rogue law enforcement officer, defendants have deprived Mr. Anemone of his good name and thereby violated the due process safeguards embodied in the Fourteenth Amendment of the U.S. Constitution.

154. Moreover, at all times relevant to this complaint, defendants Kalikow, Lapp, Dellaverson, and Sansverie as Commissioner, Executive Director, Director of Labor Relations, and Inspector of General of the MTA, respectively, were policy-makers acting on behalf of defendant MTA and with full authority to make policy with respect to the treatment of their immediate employees. Accordingly, Kalikow, Lapp, Dellaverson, and Sansverie's actions

in destroying Mr. Anemone's reputation were taken pursuant to official policy, practice and custom.

155. As a direct and proximate result of defendants' stigmatizing acts, Mr. Anemone has suffered actual damages in forms including but not limited to lost income and future earnings as evidenced by his inability to secure regular work in the law enforcement profession, in an amount not as yet ascertained.

### SIXTH CLAIM FOR RELIEF
(New York State Due Process)

156. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth at length herein.

157. At all times relevant hereto, Mr. Anemone had a valuable liberty interest in his employment with the MTA, his reputation, and his status.

158. By engaging in the conduct set forth above, including without limitation, by: (i) releasing the Interim Report and the defamatory statements contained therein to the press; (ii) issuing a press release regarding the suspension of Mr. Anemone; (iii) posting the Sansverie Letter and the defamatory statements contained therein on the MTA website; and (iv) making various other defamatory statements to the press – defendants impermissibly stigmatized plaintiff, causing damage to his good name and reputation in conjunction with his termination from government employment.

159. Defendants impermissibly denied plaintiff his property interest without due process of law in violation of New York State Constitution, Art. 1, sec. 6, and conspired

among themselves to do so (taking numerous steps in furtherance thereof), or failed to prevent others from doing so.

160. In addition, on information and belief, defendants Kalikow, Lapp, Dellaverson and Sansverie conspired among themselves to deprive Mr. Anemone of his constitutional right to due process of law as secured by New York State Constitution, Art. 1, sec. 6, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

161. Defendants Kalikow, Lapp, Dellaverson and Sansverie – who controlled, operated, presided over, and/or were employed by the MTA – acted at all times under color of law.

162. Defendants Kalikow, Lapp, Dellaverson and Sansverie acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as MTA employees. Said acts by defendants Kalikow, Lapp, Dellaverson and Sansverie were beyond the scope of their jurisdiction, without authority of law, and an abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Anemone of his constitutional rights secured the New York State Constitution, Art. 1, sec. 6.

163. Defendants' stigmatizing conduct has marred Mr. Anemone's reputation to such an extent that he has been unable to secure regular employment in the law enforcement profession since his termination from the MTA in May 2003.

164. By stigmatizing Mr. Anemone as a dishonest man and a rogue law enforcement officer, defendants have deprived Mr. Anemone of his good name and thereby violated the due process safeguards embodied the New York State Constitution.

165. Moreover, at all times relevant to this complaint, defendants Kalikow, Lapp, Dellaverson, and Sansverie as Commissioner, Executive Director, Director of Labor Relations, and Inspector of General of the MTA, respectively, were policy-makers acting on behalf of defendant MTA and with full authority to make policy with respect to the treatment of their immediate employees. Accordingly, Kalikow, Lapp, Dellaverson, and Sansverie's actions in destroying Mr. Anemone's reputation were taken pursuant to official policy, practice and custom.

166. As a direct and proximate result of defendants' stigmatizing acts, Mr. Anemone has suffered actual damages in forms including but not limited to lost income and future earnings as evidenced by his inability to secure regular work in the law enforcement profession, in an amount not as yet ascertained.

## SEVENTH CLAIM FOR RELIEF
(N.Y. Civil Service Law 75-b against defendant MTA)

167. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth at length herein.

168. While employed by the MTA, Mr. Anemone was a "public employee" within the meaning of the New York Civil Service Law 75-b.

169. At all times relevant to this complaint, defendant MTA was a "public employer" within the meaning of New York Civil Service Law 75-b.

170. At all times relevant to this complaint, defendant MTA was a "governmental body" within the meaning of New York Civil Service Law 75-b.

171.    Defendant MTA's suspension and termination of Mr. Anemone's employment was an "adverse personnel action" taken in violation New York Civil Service Law 75-b on the sole basis that Mr. Anemone disclosed what he reasonably believed to be "improper governmental action" as that term is defined in New York Civil Service Law 75-b.

172.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Anemone suffered and continues to suffer actual damages, in forms, including without limitation, lost past and future earnings, mental anguish, pain and suffering.

WHEREFORE, plaintiff respectfully requests judgment against defendants as follows:

(a)    On the First Claim for Relief, compensatory damages in an amount not yet determined, punitive damages against the individual defendants in an amount not yet determined and reasonable costs and attorneys' fees under 42 U.S.C. § 1988;

(b)    On the Second Claim for Relief, compensatory damages in an amount not yet determined, punitive damages against the individual defendants in an amount not yet determined and reasonable costs and attorneys' fees;

(c)    On the Third Claim for Relief, compensatory damages in an amount not yet determined, punitive damages against the individual defendants in an amount not yet determined and reasonable costs and attorneys' fees under 42 U.S.C. § 1988;

(d)    On the Fourth Claim for Relief, compensatory damages in an amount not yet determined, punitive damages against the individual defendants in an amount not yet determined and reasonable costs and attorneys' fees;

(e)    On the Fifth Claim for Relief, compensatory damages in an amount not yet determined, punitive damages against the individual defendants in an amount not yet determined and reasonable costs and attorneys' fees under 42 U.S.C. § 1988;

(f)    On the Sixth Claim for Relief, compensatory damages in an amount not yet determined, punitive damages against the individual defendants in an amount not yet determined and reasonable costs and attorneys' fees;

(g)    On the Seventh Claim for Relief, compensatory damages in an amount not yet determined.

(i)    Such other and further relief as the Court may deem just and proper, together with attorneys' fees interest, costs and disbursements of this action.

Dated: March 24, 2005
       New York, New York

EMERY CELLI BRINCKERHOFF & ABADY LLP

By: /s/ Matthew D. Brinckerhoff
Matthew D. Brinckerhoff (3552)

545 Madison Avenue, 3rd Floor
New York, New York 10022
(212) 763-5000

Attorneys for Plaintiff