UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LOUIS R. ANEMONE,                                    :
                                                     :
                        Plaintiff,                   :
                                                     :      05 Civ. 3170 (MBM) (AJP)
        -against-                                    :
                                                     :
                                                     :
METROPOLITAN TRANSPORTATION                          :
AUTHORITY, PETER S. KALIKOW,                         :
KATHERINE N. LAPP, GARY J. DELLAVERSON,              :
AND MATTHEW D. SANSVERIE,                            :
                                                     :
                        Defendants.                  :
-------------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF
# MOTION TO DISMISS OF
# DEFENDANT MATTHEW D. SANSVERIE,
# MTA INSPECTOR GENERAL


BERKE-WEISS & PECHMAN LLP
488 Madison Avenue - 11th Floor
New York, New York 10022
(212) 583-9500

*Attorneys for Defendant Matthew D.
Sansverie, MTA Inspector General*

# TABLE OF AUTHORITIES

## CASES

*Abramson v. Pataki,* 278 F.3d 93 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 14

*Allah v. Goord,* No. 04 Civ. 6717 (SAS),
    2005 WL 11162333 (S.D.N.Y., May 13, 2005) . . . . . . . . . . . . . . . . . . . . . .   15, 16

*Bd of Regents of State Colls. v. Roth,* 408 U.S. 564 (1972) . . . . . . . . . . . . . . . . . . .   13

*Butz v. Economou,* 438 U.S. 478 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Cleavinger v. Saxner,*  474 U.S. 193 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Cruz v. New York City Housing Authority,*
    No. 03 Civ. 8031 (RJH), 2004 WL 1970143 (S.D.N.Y. Sept. 3, 2004). . . .   13

*DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65 (2d Cir. 1996) . . . . . . . . . . . . . . . .   7

*DiBlasio v. Novello,* 344 F.3d 292 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Eng v. Coughlin,* 858 F.2d 889 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Firth v. State of New York,* 12 A.D.3d 907 (3d Dept. 2004) . . . . . . . . . . . . . . . . . .   18, 19

*Frazier v. Coughlin,* 81 F.3d 313 (2d Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 15

*Hammerhead Enterprises, Inc. v. Brezenoff,* 707 F.2d 33 (2d Cir. 1983) . . . . . . . . .   10

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 17

*Hunter v. Bryant,* 502 U.S. 224 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Imbler v. Pachtman,* 424 U.S. 409, 423 n. 20 (1976) . . . . . . . . . . . . . . . . . . . . . . . .   17

*Kerman v. City of New York,* 261 F.3d 229 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . .   16

*Lava Trading Inc. v. Hartford Trading Co., Inc.,*
    326 F. Supp.2d 434 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Malley v. Briggs,* 475 U.S. 335 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*National Congress for Puerto Rican Rights v. City of New York*
    75 F. Supp.2d 154 (S.D.N.Y. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . .   11

*Nietzke v. Williams,* 490 U.S. 319 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Okwedy v. Molinari,* 333 F.3d 339 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Patterson v. City of Utica,* 370 F.3d 322 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . .   14

*Rotermund v. United States Steel Corp.,* 474 F.2d 1139, 1145 (8th Cir. 1973). . . . .   11

*Saucier v. Katz,* 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Straker v. MTA,* 333 F. Supp.2d 91 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . .   13, 15

*Tenenbaum v. Williams,* 193 F.3d 581 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . .   15

*Velez v. Levy,* 401 F.3d 75 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

*White Plains Towing Corp. v. Patterson,* 991 F.2d 1049 (2d Cir. 1993). . . . . . . . . .   12, 14

*X-Men Security, Inc. v. Pataki,* 196 F.3d 56 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . .   *passim*

*Young v. Selsky,* 41 F.3d 47 (2d Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

## STATUTES

FED. R. CIV. P.  12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 7

N.Y. PUB. AUTH. LAW § 552 (McKinney 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

N.Y. PUB. AUTH. LAW § 1201 (McKinney 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

N.Y. PUB. AUTH. LAW § 1263(1) (McKinney 1998) . . . . . . . . . . . . . . . . . . . . . . . . .   2

N.Y. PUB. AUTH. LAW § 1263(4)(b) (McKinney 1998) . . . . . . . . . . . . . . . . . . . . . . .   2

N.Y. PUB. AUTH. LAW § 1279 (McKinney 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 11

N.Y. PUB. AUTH. LAW § 1279(1) (McKinney 1998) . . . . . . . . . . . . . . . . . . . . . . . . .   2, 17

N.Y. PUB. AUTH. LAW § 1279(4) (McKinney 1998) . . . . . . . . . . . . . . . . . . . . . . . . .   3

N.Y. PUB. AUTH. LAW § 1279(4)(a) (McKinney 1998) . . . . . . . . . . . . . . . . . . . . . . .   17

N.Y. PUB. AUTH. LAW § 1279(4)(c) (McKinney 1998) . . . . . . . . . . . . . . . . . . . . . . .   17

Louis Pechman [LP-6395]
Berke-Weiss & Pechman LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500
*Attorneys for Defendant Matthew D. Sansverie,*
*MTA Inspector General*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
LOUIS R. ANEMONE,                                                   :
                                                                    :  05 Civ. 3170 (MBM) (AJP)
                                        Plaintiff,                   :
                                                                    :
        -against-                                                   :
                                                                    :  **MEMORANDUM**
METROPOLITAN TRANSPORTATION AUTHORITY,                              :  **OF LAW**
PETER S. KALIKOW, KATHERINE N. LAPP, GARY J.                        :
DELLAVERSON, and MATTHEW D. SANSVERIE,                              :
                                                                    :
                                        Defendants.                 :
-------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

Defendant Matthew D. Sansverie, Metropolitan Transportation Authority ("MTA") Inspector General (the "Inspector General") submits this Memorandum of Law in support of his motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint of plaintiff Louis R. Anemone ("plaintiff") as against the Inspector General in its entirety.

Plaintiff seeks to impose liability on the Inspector General for statements made in reports issued by him pursuant to his statutory responsibilities. Pursuant to his authority to conduct investigations and report his findings, the Inspector General issued two reports that were critical of plaintiff's actions as Deputy Executive Director of Security for the MTA. The Complaint, however, does not allege that the Inspector General -- who is appointed by and serves at the pleasure of the Governor of New York -- was plaintiff's employer, that he had the authority to suspend or terminate

plaintiff, or that he had the power to provide any sort of process to plaintiff.  In the absence of such authority, the Inspector General could not infringe on plaintiff's constitutional rights as a matter of law.  Accordingly, there is no basis for this Court to find that the Inspector General violated any constitutional right of plaintiff and the Complaint should be dismissed against him in its entirety.

**THE PARTIES**

**The MTA**

The MTA, a public benefit corporation created by the New York State legislature, is charged with running the largest public transportation system in the United States.  *See* PUB. AUTH. LAW § 1263(1).  It operates as the parent organization of a number of subsidiaries and affiliates, including the New York City Transit Authority, Long Island Rail Road Co., Metro-North Commuter Railroad, Triborough Bridge and Tunnel Authority, the Manhattan and Bronx Surface Transit Operating Authority, Staten Island Rapid Transit Operating Authority, and the Metropolitan Suburban Bus Authority.  *See* PUB. AUTH. LAW §§ 552, 1201, 1263(4)(b).

**The Inspector General**

The Office of the MTA Inspector General was created in 1983 by the New York State legislature.  PUB. AUTH. LAW § 1279.  While the Inspector General was created "within" the MTA, the Inspector General is appointed by and serves at the pleasure of the Governor for a five-year term.  PUB. AUTH. LAW § 1279(1).

The legislature gave the Inspector General responsibility for investigating the activities and operations of the MTA, including investigating management and service deficiencies, recommending improvements, and investigating allegations of fraud and abuse.  In particular, the legislature granted the Inspector General the following

2

functions, powers and duties, as set forth in Section 1279(4) of the Public Authorities Law:

> (a) to receive and investigate complaints from any source or upon his own initiative concerning alleged abuses, frauds and service deficiencies including deficiencies in the maintenance and operation of facilities relating to the [MTA] and its subsidiaries . . . ;

> (b) to initiate such reviews as he may deem appropriate of the operations of the [MTA] and its subsidiaries . . . in order to identify areas in which performance might be improved and available funds used more effectively;

> (c) to recommend remedial actions to be taken by the [MTA] and its subsidiaries . . . to overcome or correct operating or maintenance deficiencies and inefficiencies that he determines to exist;

> (d) to make available to appropriate law enforcement officials information and evidence which relate to criminal acts that he may obtain in carrying out his duties;

> (e) to subpoena witnesses, administer oaths or affirmations, take testimony and compel the production of such books, papers, records and documents as he may deem to be relevant to any inquiry or investigation undertaken pursuant to this section and to delegate such powers to a duly authorized deputy inspector general;

> (f) to monitor the implementation by the [MTA] of recommendations made by the inspector general or other audit agencies; and

> (g) to do all things necessary to carry out the functions, powers and duties set forth in this section.

**Louis Anemone**

Plaintiff was employed as Deputy Executive Director of Security for the MTA from December 10, 2001 to May 8, 2003. Complaint, ¶ 6. As Director of Security, plaintiff supervised the operations of the MTA police and Staten Island Railroad Police, coordinated the national guards and MTA personnel posted at bridges and tunnels

3

throughout the metropolitan area, coordinated security provided by the NYPD's Transportation Bureau, oversaw the activities of the security departments of Metro North, Long Island Rail Road, and New York City Transit, and organized the MTA consultants and employees to develop security projects acceptable to the Federal Emergency Management Agency.  Complaint, ¶ 20.

**THE ALLEGATIONS AGAINST
THE INSPECTOR GENERAL**

Plaintiff's factual allegations against the Inspector General are essentially to two items of correspondence the Inspector General issued to Peter Kalikow, Chairman of the MTA ("Chairman Kalikow") pursuant to the Inspector General's statutory duties.

The first correspondence to Chairman Kalikow of which plaintiff complains was the March 31, 2003 Interim Report of the Inspector General that detailed acts of obstruction by plaintiff and Casale in regard to an investigation into allegations against Kenneth Bauer, then President of the Long Island Rail Road.  With respect to the Interim Report, the Complaint alleges as follows:

> Mr. Anemone's statements to the press resulted in immediate and direct retaliation by MTA officials.  On March 31, 2003, the day after publication of *The New York Times* article, defendant Sansverie sent what he described as an "Interim Report" to defendant Kalikow recommending the immediate suspension of Mr. Anemone ("Interim Report"). (Complaint, ¶ 80).
>
> The Interim Report contained a litany of factual misrepresentations, distortions of statements made by various individuals, and a series of unfounded accusations. Most significantly, the Interim Report falsely stated that Mr. Anemone had made an "admission" during his interview with the MTA Inspector General's office that there had never been a "confidential informant" in the Plasser-American matter, and that Mr. Anemone had lied to Inspectors by

4

"fabricating a confidential informant in order to accuse the former President of the LIRR of misconduct." This allegation was false: Mr. Anemone named defendant Dellaverson as the source of the original lead regarding Bauer. (Complaint, ¶ 81).

The Interim Report also accused Mr. Anemone of authorizing an investigation of Plasser-American against the direct command of his superior, defendant Lapp. This accusation was also false: Mr. Anemone terminated the investigation on February 26, 2003, directly after he met with defendant Lapp to inform her of the investigation. (Complaint, ¶ 82).

The second correspondence to Chairman Kalikow of which plaintiff complains was a letter dated April 18, 2003. With respect to the April 18 letter, the Complaint alleges as follows:

Seven days after Mr. Anemone's critical testimony before the Assembly, defendant Sansverie took his revenge through a letter dated April 18, 2003 to defendant Kalikow that alleged additional improprieties by Mr. Anemone (the "Sansverie Letter"). (Complaint, ¶ 97).

Specifically, the Sansverie Letter alleged wrongdoing by Mr. Anemone and Mr. Casale in the formation of a proposed board of experts -- the Counter Terrorism Advisory Board ("CTAB") -- that would advise the JITF in various areas of emergency management (e.g., medical, engineering, psychological). (Complaint, ¶ 98).

Mr. Sansverie alleged that Mr. Anemone had grossly misrepresented the size and composition of the CTAB and that he violated the law by providing CTAB member with MTA identification. (Complaint, ¶ 99).

The Sansverie Letter also intimated that Mr. Anemone had acted improperly by awarding a canine security contract to a company that was operated by an individual he was acquainted with from his work at the NYPD. (Complaint, ¶ 100).

These allegations of wrongdoing were false and based on gross distortions of facts surrounding the creation of the

5

CTAB and the approval of the canine security contract at issue.  (Complaint, ¶ 101).

Upon information and belief, defendant Sansverie wrote the Sansverie Letter, leaked it to the press, and posted it on the MTA website in retaliation for, among other things, Mr. Anemone's statements to the Assembly Committee criticizing defendant Sansverie publicly for his poor performance as MTA Inspector General.  (Complaint, ¶ 102).

**ARGUMENT**

Rule 12(b)(6) of the Federal Rules of Civil Procedure enables a defendant to file a motion to dismiss for a plaintiff's "failure to state a claim upon which relief can be granted." Dismissal of a complaint for failure to state a claim streamlines litigation by "dispensing with needless discovery and factfinding." *Nietzke v. Williams,* 490 U.S. 319, 326-27 (1989). "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *Lava Trading Inc. v. Hartford Trading Co., Inc.,* 326 F. Supp.2d 434, 438 (S.D.N.Y. 2004) (quoting *DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir. 1996).

Here, dismissal of plaintiff's Complaint is warranted because taking all its allegations as true, the Complaint fails to state a claim upon which relief can be granted against the Inspector General for any of the claims asserted.

**POINT I**

**PLAINTIFF FAILS TO STATE A
FIRST AMENDMENT RETALIATION CLAIM
AGAINST THE INSPECTOR GENERAL**

Plaintiff's First Amendment retaliation claim alleges that his free speech rights were violated by his "suspension and termination."[1] (Complaint, ¶ 116).  Plaintiff's Complaint, however, does not attribute to the Inspector General a "decisionmaking" role in plaintiff's suspension or termination.  The acts plaintiff attributes to the Inspector General are merely the issuance of an Interim Report dated March 31, 2003 to Chairman Kalikow ("Kalikow") (Complaint, ¶ 80), and the issuance of a letter dated April 18, 2003 to Chairman Kalikow. (Complaint, ¶ 90).  Both the Interim Report and letter were issued pursuant to the Inspector General's statutorily established duties, which are advisory in nature. PUB. AUTH. §1279.  Because neither correspondence was made by the Inspector General in a decisionmaking role as to plaintiff, plaintiff fails to state a claim against the Inspector General for First Amendment retaliation.

A claim for First Amendment retaliation cannot stand against a non-decisionmaker, such as the Inspector General.  As noted by the Second Circuit:

> [S]peech by persons who are not decisionmakers and who merely engage in advocacy without threats, intimidation, or coercion is protected by the First Amendment.  The "critical line for First Amendment purposes must be drawn between advocacy, which is entitled to full protection, and action, which is not."

*X-Men Security, Inc. v. Pataki,* 196 F.3d 56, 71 (2d Cir. 1999) (citations omitted).

---

[1] Because plaintiff has not alleged a tort claim for defamation under New York State Law, his constitutional claims depend upon the existence of an adverse employment action.  *See Velez v. Levy* 401 F.3d 75, 95 (2d Cir. 2005).  In this case, plaintiff's claims rely on his "suspension and termination," as noted in his Complaint.

*X-Men* involved a First Amendment retaliation claim against legislators who were alleged to have made accusations against plaintiffs, asking government agencies to conduct investigations into plaintiffs' operations, questioning plaintiffs' eligibility for an award of a contract and advocating that plaintiffs not be retained in a publicly funded contract. *Id.* at 68. The Second Circuit affirmed the dismissal of the complaint as to the legislator defendants because of their lack of authority over the plaintiff:

> There is no allegation in the complaint that the legislators had any authority to shape or supervise that process. Nor is there any allegation that, following the conclusion of that process, the legislators had any control over the award or renewal of contracts with respect to any given bidder.

*Id.* In so ruling, the Second Circuit cautioned that "[c]ases holding that a decisionmaker may not take action for impermissible reasons do not provide the proper analytical framework for claims against persons who are not decisionmakers but merely advocates." *Id.* at 70. In the absence of such decisionmaking authority, the court found that defendants could not be prevented "from exercising their rights merely to express their views." *Id.*

Similarly, in *Velez v. Levy,* 401 F.3d 75 (2d Cir. 2005), the Second Circuit affirmed the dismissal of plaintiff's First Amendment retaliation claim as to defendant school board members because they were not decisionmakers. The plaintiff in *Velez*, a fired school board member, alleged a conspiracy involving fellow board members, investigators and the Chancellor of the New York City School District. Velez's allegations were that the board members concocted a basis that the defendant School Chancellor used as a reason for firing her. *See id.* In affirming the dismissal of the school board members from the case, the Second Circuit reasoned as follows:

> *X-Men* controls Velez's First Amendment claims against the board members. Velez concedes that the board had no legal authority over the Chancellor's removal decision and that they acted in a legislative capacity. Accordingly, though the actions of the board member defendants undoubtedly set into motion Velez's ouster, those actions cannot, consistent with *X-Men,* support a First Amendment retaliation claim.

*Id.* at 99. *See also Okwedy v. Molinari,* 333 F.3d 339 at 344 (2d Cir. 2003) ("[w]hat matters is the distinction between attempts to convince and attempts to coerce"); *Hammerhead Enterprises, Inc. v. Brezenoff,* 707 F.2d 33, 39 (2d Cir. 1983) (holding that where a public official did not engage in any "threat, coercion, or intimidation," the official's speech did not violate any constitutional right of plaintiffs).

Notably, plaintiff's Complaint does not allege that the Inspector General had the power or authority to suspend, terminate or otherwise take any adverse employment action against plaintiff. Indeed, as a matter of law, the Inspector General had no authority to hire, fire, or discipline plaintiff inasmuch as Public Authorities Law § 1279 limits the Inspector General's function "to recommend[ing] remedial action to be taken by the [MTA]."[2] While Section 1279 imposes a duty on the MTA to respond to any final reports made by the Inspector General, the law imposes no duty on the MTA to act on or specifically adopt any recommendation made by the Inspector General. The MTA is free to accept or reject the Inspector General's recommendations. Therefore, the Inspector General, like the non-decisionmaker parties in *Velez* and *X-Men*, should be dismissed as a party to this action.

Moreover, because the Inspector General is not decisionmaker as to plaintiff, the Inspector General's speech is entitled to "full protection" under the First Amendment.

---

[2] This point is acknowledged in paragraph 11 of the Complaint which alleges that the Inspector General "was a policy-maker *with respect to policies, practices and customs of the Inspector General of the MTA.*" (emphasis added).

*X-Men Security Inc.,* 196 F.3d at 71.  As the Court found in *X-Men*, if a defendant is not a decisionmaker, a First Amendment retaliation case fails regardless of whether the speech is true or false. *Id.* at 69.  Therefore, plaintiff does not have a constitutional right to prevent the Inspector General from exercising his free speech rights in performing his statutorily created duty to "receive and investigate complaints from any source or upon [his] own initiative and to recommend remedial actions to be taken by the authority . . . " PUB. AUTH. LAW § 1279.  Holding the Inspector General liable for performing his statutorily created duties would create a chilling effect on the Office of the Inspector General -- undermining the very function of this office.[3]

Finally, plaintiff's conclusory allegations of a conspiracy do not save the Complaint as against the Inspector General.  A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Rotermund v. United States Steel Corp.,* 474 F.2d 1139, 1145 (8th Cir. 1973).  In order to successfully plead a 42 U.S.C. § 1983 conspiracy, plaintiff is required to plead these elements in more than a "conclusory" manner. *See, e.g., X-Men Security Inc.,* 196 F.3d at 71 ("As to what the legislators are alleged to have done, the complaint contains several charges of 'participation' in a 'conspiracy' that are conclusory, and are for that reason insufficient to state a claim"); *Nat'l Congress for Puerto Rican Rights v. City of New York,* 75 F. Supp.2d 154 (S.D.N.Y. 1999) ("Where the complaint makes only conclusory allegations of a conspiracy . . . and fails to allege the facts suggesting an agreement or

---

[3] The same principles apply to plaintiff's second claim for relief under the New York State Constitution for "Free Speech Retaliation" and this claim should be dismissed against the Inspector General for the same reasons.

meeting of the minds among the defendants, the court may properly dismiss the complaint"). Here, plaintiff's conclusory allegations of a conspiracy involving the Inspector General fail to make out a claim against him for a violation of plaintiff's constitutional rights.[4]

## POINT II

### PLAINTIFF FAILS TO STATE A PROCEDURAL DUE PROCESS CLAIM AGAINST THE INSPECTOR GENERAL

"In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest." *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1062 (2d Cir. 1993). Plaintiff cannot state a valid claim for deprivation of a property interest since he did not have a cognizable property interest in his at-will employment with the MTA. Moreover, plaintiff does not have a valid claim for deprivation of a liberty interest against the Inspector General because his Complaint does not allege that the Inspector General had the power to provide process to plaintiff. [5]

### 1. Property Interest

In order to establish a due process violation for deprivation of a property interest in one's employment, "plaintiff must show that state action deprived [him or] her of a property interest protected by the Fourteenth Amendment." *Velez v. Levy*, 401

_____

[4] This analysis applies equally to all the claims pled by plaintiff in which he alleges that the Inspector General "conspired" to deprive him of his constitutional rights. *See* Complaint ¶¶ 126, 140, 149, 160.

[5] Plaintiff's fourth claim for relief against the Inspector General for violations of his procedural due process rights under the New York State Law Constitution should be analyzed under the same standards and dismissed accordingly.

F.3d 75, 85 (2d Cir. 2005).  In order to "have an interest protectable under the Constitution, a person must have a 'legitimate claim of entitlement to it.'" *Abramson v. Pataki,* 278 F.3d 93, 99 (2d Cir. 2002) (quoting *Bd of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972)).  An "abstract need, desire, or unilateral expectation [of employment] is not enough." *Id.*

The Second Circuit has cautioned that "[o]nly where a plaintiff can demonstrate that state law confers 'a legitimate claim of entitlement' to a particular position will a property interest in that position arise."  *Velez,* 401 F.3d at 85 (dismissing plaintiff's due process claim and holding that plaintiff lacked "a constitutionally cognizable property interest in her elected office").  "[A] constitutionally protected property interest is typically established by a showing that under the provisions of a statute or collective bargaining agreement, the employee cannot be terminated or demoted without a hearing and only upon a showing of cause." *Cruz v. New York City Housing Authority,* No. 03 Civ. 8031 (RJH), 2004 WL 1970143 at *3 (S.D.N.Y. Sept. 3, 2004).

The plaintiff bears the burden of demonstrating the existence and infringement of a protected liberty or property interest. *See Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir. 1996).  If the plaintiff is unable to show the existence of a protected interest, the claim must be dismissed regardless whether the defendants acted in accordance with the requisite procedures. *See id.* at 317-18.

Here, plaintiff has failed to allege a constitutionally protected property interest in his position since he has not asserted an "independent source" establishing such an interest.  First, plaintiff does not allege to have a contract with the MTA and therefore is an employee at-will.  In this regard, it is well-settled that "an at-will employee does not have a protected property interest in his or her continued employment." *Straker v.*

*MTA,* 333 F. Supp.2d 91, 96 (E.D.N.Y. 2004); *see also Abramson,* 278 F.3d 93, 98 (2d Cir. 2002) ("[e]mployees at will have no protectible property interest in their continued employment"); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1062 (2d Cir. 1993) ("An interest that state law permits to be terminated at the whim of another person is not a property right that is protected by the Due Process Clause.")  Second, plaintiff has not alleged in his Complaint that he was protected by either statute or a collective bargaining agreement.  Thus, there is no ground upon which plaintiff can assert a claim of entitlement to his position with the MTA under the Due Process Clause.

### 2. Liberty Interest

To state a valid claim for a deprivation of liberty without due process, plaintiff's complaint must assert (1) that he possessed a cognizable liberty interest, and (2) that defendant deprived him of liberty without providing process adequate to justify his actions. *See Velez,* 401 F.3d at 87.  "In the case of government employees, a deprivation of a liberty interest without due process of law arises 'when an alleged government defamation occurs in the course of dismissal from government employment.'" *Straker v. MTA,* 333 F. Supp.2d 91, 97 (E.D.N.Y. 2004), *citing Patterson v. City of Utica,* 370 F.3d 322, 329-30 (2d Cir. 2004).

Plaintiff fails to state a claim for deprivation of a liberty interest against the Inspector General because he does not allege in the Complaint that the Inspector General could provide any process to plaintiff.  The Second Circuit in *Velez* held that plaintiff could not state a valid claim under the Due Process Clause against defendant board members and investigators, stating "none of the board member defendants had the power to provide process to the plaintiff." *Velez,* 401 F.3d at 93.  Specifically, the board members "could order neither pre-removal review nor post-removal remedies.

As a consequence they cannot be held legally accountable for the alleged process failure." *Id.*   The Court employed the same reasoning to dismiss plaintiff's liberty interest claim against the investigator defendants, stating that "the investigators had no legal authority to bring about [plaintiff's] ouster." *Id.*   As in *Velez*, here the Inspector General could not order pre-removal review or post-removal remedies and simply did not have any power to provide process to Anemone.   Therefore, the Inspector General "cannot be held legally accountable for the alleged process failure." *See id.*

**POINT III**

**THE INSPECTOR GENERAL IS
ENTITLED TO QUALIFIED IMMUNITY**

The qualified immunity doctrine shields "government officials performing discretionary functions. . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 810 (1982).  *See also Tenenbaum v. Williams,* 193 F.3d 581, 595-96 (2d Cir. 2000) ("The qualified immunity doctrine protects government officials from suits seeking to impose personal liability for money damages based on unsettled rights or on conduct that was not objectively unreasonable.").   "The immunity protects the official not just from liability but also from suit on such claims, thereby sparing him the necessity of defending by submitting to discovery on the merits or undergoing a trial." *X-Men Security Inc.* 196 F.3d at 56.

"[T]he Supreme Court has repeatedly 'stressed the importance of resolving the question of qualified immunity at the earliest possible stage in litigation.'" *Allah v. Goord*, No. 04 Civ. 6717 (SAS), 2005 WL 1162333 at *2 (S.D.N.Y. May 13, 2005), *citing Hunter v. Bryant,* 502 U.S. 224, 227 (1991).  Qualified immunity protects "all but the plainly

15

incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341-49 (1986). *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir. 1988) (stating that the qualified immunity doctrine protects public officials from "personally facing the risk of incurring ruinous liability in the form of money damages, which would deter qualified people from public service").

The threshold issue in a qualified immunity analysis is whether, "[t]aken in the light most favorable to the party asserting the injury," the facts show that the officers' conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). *See also Kerman v. City of New York,* 261 F.3d 229, 235 (2d Cir. 2001) ("When determining whether qualified immunity protects an official, we must first determine whether the plaintiff has presented facts which, if proven, demonstrate that the defendant violated a constitutional right."). "If no constitutional right is violated, no further inquiry is necessary." *Allah,* 2005 WL 1162333 at *3.

As discussed in Points I and II above, the Inspector General's conduct as alleged by plaintiff -- namely issuing an Interim Report and a letter to Chairman Kalikow -- does not constitute a violation of either the First Amendment or procedural due process. First, plaintiff is unable to state a claim for First Amendment retaliation against the Inspector General, a non-decisionmaker. Second, plaintiff has alleged no cognizable property interest in his employment. Finally, plaintiff does not allege a valid constitutional claim for deprivation of a liberty interest against the Inspector General, who did not have the power or authority to provide process to plaintiff. Consequently, with respect to these claims, the Inspector General could not have violated the clearly established constitutional rights of plaintiff, and he is entitled to qualified immunity for suit against him in his personal capacity.

## POINT IV

### THE INSPECTOR GENERAL IS
### ENTITLED TO ABSOLUTE IMMUNITY

Absolute immunity is, under appropriate circumstances, extended to officials of government agencies "performing certain functions analogous to those of a prosecutor or a judge." *Butz v. Economou,* 438 U.S. 478, 515 (1978).  In considering whether the procedures used by the agency are sufficiently similar to judicial process to warrant a grant of absolute immunity, courts employ a "functional approach," *Cleavinger v. Saxner,* 474 U.S. 193, 201-02 (1985) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 810 (1982)), and look to whether the actions taken by the official are "functionally comparable" to that of a judge or a prosecutor. *Butz,* 438 U.S. at 513; *see also Imbler v. Pachtman,* 424 U.S. 409, 423 n. 20 (1976); *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir. 1994).  "[O]nce a court determines that an official was functioning in a core judicial or prosecutorial capacity, absolute immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *DiBlasio v. Novello,* 344 F.3d 292, 297 (2d Cir. 2003).

Here, the Inspector General is "appointed by and serves at the pleasure of the Governor" by explicit statutory mandate.  PUB. AUTH. LAW § 1279(1).  The Legislature has by definition "delegated the authority to carry out [its] duties" to the Inspector General, and principal among those is the duty "to receive and investigate complaints from any source" and the duty "to recommend any remedial actions to be taken by the [MTA] and its subsidiaries." PUB. AUTH. LAW § 1279(4)(a) and (c).  Absolute immunity should be afforded to the Inspector General so that he can fulfill his function without the spectre of lawsuits by individuals he charges with misconduct.

17

This court should adopt the reasoning of the Appellate Division, Third Department, which recently concluded that the Office of the State Inspector General ("OSIG") - - receiving its authority pursuant to executive order - - was cloaked with absolute immunity. *Firth v. State of New York*, 12 A.D.3d 907 (3d Dept. 2004). In *Firth*, the OSIG conducted an investigation of the Department of Environmental Conservation's Law Enforcement Division ("LED") regarding possible mismanagement and illegal activity, the results of which were subsequently published on the Internet. The Third Department affirmed the lower court's decision to grant the defendants' motion for summary judgment, dismissing the action because of the State Inspector General's absolute immunity. The court reasoned as follows:

> The privilege of absolute immunity is bestowed upon an official who is "a principle executive of State or local government or is entrusted by law with administrative or executive policy-making responsibilities of considerable dimension" and "extends to those of subordinate rank who exercise delegated powers." As the Governor would clearly be entitled to absolute immunity, so are employees or agents specifically delegated the authority to carry out his duties (internal cites omitted).

*Id.* at 907-908.

The Inspector General's functions are analogous to those of the State Inspector General in *Firth* in which the court stated that "[t]he duty to recommend remedial action and amendment of policies and procedures, together with the power to monitor implementation of its recommendations, renders [the office of the state Inspector General] more than merely an investigatory agency like a police force, for which no absolute privilege exists." In fact, the Inspector General's functions here are of a more

18

permanent nature than that of the State Inspector General in *Firth* because the Inspector General's power in this case is delegated by statute.

Moreover, public policy dictates that absolute immunity be extended to the Inspector General. The Inspector General is appointed by the Governor, and charged with the responsibility to find and expose wrongdoing. The very nature of the Inspector General's position lends itself to making charges and allegations against MTA employees and vendors. If the Inspector General is faced with the threat of personal liability for his good faith judgments on matters of fraud, corruption and mismanagement, the effectiveness of his role will be marginalized. The Inspector General was appointed by the Governor to call things as he sees them, and the imposition of constitutional liability for his mistakes will have a chilling effect on that role.

## CONCLUSION

For all the foregoing reasons, it is respectfully requested that plaintiff's

Complaint against the Inspector General be dismissed in its entirety.


Dated:  New York, New York
        May 27, 2005

                                    BERKE-WEISS & PECHMAN LLP


                                    By: _____s/_____
                                        Louis Pechman, Esq. [LP-6395]
                                        488 Madison Avenue, 11th Floor
                                        New York, New York 10022
                                        (212) 583-9500
                                        *Attorneys for Defendant Matthew D.*
                                        *Sansverie, MTA Inspector General*


TO:    Matthew D. Brinckerhoff, Esq. [MB-3552]
       Emery Celli Brinckerhoff & Abady LLP
       545 Madison Avenue, 3rd Floor
       New York, NY  10022
       (212) 763-5000
       *Attorneys for Plaintiff*

       Neil H. Abramson, Esq. [NA-0889]
       Proskauer Rose LLP
       1585 Broadway
       New York, NY  10036-8299
       (212) 969-3001
       *Attorneys for the MTA Defendants*